**TA LEGAL GROUP PLLC**
Taimur Alamgir, Esq.
205 E Main Street, Ste. 3-2
Huntington, NY 11743
(914) 552-2669
tim@talegalgroup.com
*Attorneys for Plaintiff, FLSA Collective Plaintiffs, and Class Members*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

CAITLIN LAPERA, *on behalf of herself, FLSA Collective Plaintiffs, and Class Members*,

Plaintiff,

v.

SLJ BAR LLC D/B/A COMMON GROUND, DAECREW 63 LLC, JESSE BAER, NICOLE PASSARO, MICHAEL ROMER AND CHRISTOPHER REDA,

Defendants.

**Case No.**

**CLASS AND COLLECTIVE ACTION COMPLAINT**

**Jury Trial Demanded**

Plaintiff, Caitlin LaPera ("Plaintiff" or "LaPera"), on behalf of herself, FLSA Collective Plaintiffs, and Class Members, by and through her undersigned counsel, TA Legal Group PLLC, hereby files this Class and Collective Action Complaint against Defendants SLJ Bar LLC d/b/a Common Ground ("Common Ground"), Daecrew 63 LLC ("D63"), Jesse Baer ("Baer"), Nicole Passaro ("Passaro"), Michael Romer ("Romer") and Christopher Reda ("Reda") (collectively, "Defendants") and alleges as follows:

## INTRODUCTION

1. Located at 63 Gansevoort Street in the heart of Manhattan's Meatpacking District, Common Ground has developed into one of New York City's most recognizable and buzziest

nightlife destinations—a bustling, high-energy venue known for celebrity patronage, packed weekend crowds, and lines stretching down the block late into the night.

2. At the center of Common Ground's success is its founder and public face, Defendant Christopher Reda, a self-styled nightlife impresario who has cultivated an image of wealth, exclusivity, and influence through social media, reality television appearances, and publicized relationships with celebrities and entertainment figures, most notably Scott Disick and other members of the Kardashian circle.

3. This case is brought under the Fair Labor Standards Act ("FLSA") on behalf of a collective, and under the New York Labor Law ("NYLL") on behalf of a Rule 23 Class to address Common Ground's systematic theft of wages from Plaintiff and similarly situated employees upon whom the Common Ground business and brand are built.

4. Plaintiff LaPera, a non-exempt, tipped employee of Common Ground, seeks redress on behalf of herself and similarly situated co-workers who suffered wage and hour violations, tip misappropriation, unlawful deductions from gratuities, delayed and withheld payment (frequently resulting in class and collective members not receiving compensation for weeks on end). Common Ground's unlawful practices remain in place notwithstanding that the New York State Department of Labor determined last year that Common Ground violated the wage-and-hour laws by failing to pay employees on time and assessed penalties. Common Ground's continued failure to pay employees on time warrants 100% liquidated damages.

5. Common Ground's exploitation of its workforce is particularly shocking and egregious given the establishment's popularity and profitability, and Mr. Reda's presentation of himself as a hospitality industry heavyweight.

## CLAIMS

5. Plaintiff seeks recovery under the FLSA on behalf of herself and FLSA Collective Plaintiffs from Defendants for: (1) unpaid minimum wages; (2) unlawfully retained and misappropriated tips; (3) liquidated damages; and (4) attorneys' fees and costs.

6. Plaintiff further alleges, pursuant to the NYLL and Fed. R. Civ. P. 23, on behalf of herself and Rule 23 Class Members, that she is entitled to recover damages from Defendants for: (1) unpaid minimum and regular wages; (2) unlawfully retained tips; (3) unlawful credit-card fee deductions from gratuities; (4) liquidated damages for the late payment of wages; (5) statutory penalties for Defendants' failure to provide proper wage notices under NYLL § 195(1) and wage statements under NYLL § 195(3); and (6) reasonable attorneys' fees and costs.

7. Plaintiff further alleges, on behalf of herself, pursuant to the anti-retaliation provisions of the FLSA, 29 U.S.C. § 215, and the NYLL, NYLL § 215, that she is individually entitled to recover damages against Defendants for retaliation, including lost wages, emotional distress damages, punitive damages, and attorney's fees and costs.

## JURISDICTION, VENUE, AND CONDITIONS PRECEDENT

8. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1337 because Plaintiff's claims under the FLSA, 29 U.S.C. § 201 et seq., raise a federal question.

9. This Court possesses supplemental jurisdiction over Plaintiff's related state law claims under the NYLL pursuant to 28 U.S.C. § 1367(a), as the state law claims derive from a common nucleus of operative facts and are so closely related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

10. This Court has personal jurisdiction over Defendants in that SLJ and Daecrew are incorporated, organized, registered, and/or authorized to do business in the State of New York and maintain corporate headquarters, worksites, and/or primary places of business in the State of New York.

11. Furthermore, the Individual Defendants are domiciled in the State of New York, conduct substantial business within this District, and/or are subject to personal jurisdiction under N.Y. C.P.L.R. § 302, New York's long-arm statute.

12. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b) because Defendants conduct business in this District, Plaintiff performed labor for Defendants in this District, Defendants' payroll and gratuity practices were implemented in this District, and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

13. Defendants engage in an enterprise whose annual gross volume of sales made or business done is not less than $500,000, the activities of which affect interstate commerce in that employees of Defendants handle, sell, and provide services, alcohol, food, supplies, credit-card transactions, point-of-sale systems, and goods produced outside of New York that have moved in interstate commerce.

14. At all relevant times, Defendants were and continue to be an "enterprise engaged in commerce" within the meaning of the FLSA, 29 U.S.C. § 203(r) and (s), the NYLL, and the supporting regulations thereunder.

15. At all relevant times, the work performed by Plaintiff, the FLSA Collective Plaintiffs, and the Rule 23 Class Members was directly essential to the daily operations and overall business operated by Defendants.

16. None of the claims asserted by Plaintiff in this case are subject to any arbitration agreement. Plaintiff never agree to arbitrate any claims whatsoever with respect to SLJ, D63, Common Ground in NYC, or any of the Defendants as they relate to Common Ground in NYC. The same applies to FLSA Collective Plaintiffs and Class Members.

17. Plaintiff has fulfilled all conditions precedent to the institution of this action and/or such conditions have been waived by Defendants.

## PARTIES

18. Plaintiff LaPera is an adult individual and a resident of Richmond County, New York.

19. During the relevant period, Plaintiff worked as a bartender for Common Ground from 2023 to present.

20. SLJ Bar LLC operates Common Ground at 63 Gansevoort Street.

21. At all times relevant to this Complaint, Plaintiff was an "employee" of each of Defendants within the meaning of FLSA § 203(e) and NYLL §§ 190(2) and 651(5), and a "manual worker" within the meaning of NYLL § 190(4).

22. The work performed by Plaintiff was essential and integral to Defendants' business operations. Plaintiff did not exercise independent managerial discretion, did not possess a meaningful opportunity for profit or loss, and was economically dependent upon Defendants' enterprise.

23. Defendant SLJ Bar LLC d/b/a Common Ground is, upon information and belief, a limited liability company organized and existing under the laws of the State of New York. SLJ operates Common Ground at 63 Gansevoort St., New York, NY 10014.

24. Throughout Plaintiff's period of employment, SLJ was the only entity that compensated her for her work at Common Ground. Similarly, SLJ was the exclusive entity that paid the wages of the FLSA Collective Plaintiffs and Class Members for work performed at Common Ground.

25. Defendant Daecrew 63 LLC is, upon information and belief, a Delaware limited liability company owned in part by Defendant Reda that is an owner of SLJ Bar LLC.

26. Defendants Jesse Baer, Nicole Passaro, Michael Romer, and Christopher Reda (the "Individual Defendants") are, upon information and belief, owners of SLJ Bar LLC, directly or indirectly, and senior management of SLJ Bar LLC d/b/a Common Ground.

27. At all relevant times, the Individual Defendants exercised operational control over Plaintiff's terms and conditions of employment, including scheduling, supervision, payroll, wage payment, tip distribution, and employment records. Individual Defendants maintained similar operational control over FLSA Collective Plaintiffs and Class Members.

28. Defendant Reda oversees all operations at Common Ground. He is a part owner of SLJ Bar LLC. He is regularly present at Common Ground, holds himself out publicly as the owner of the business, and directly supervised Plaintiff and members of the proposed class and collective. Plaintiff and similarly-situated co-workers at Common Ground have frequently complained to Defendant Reda about wage-and-hour violations

29. Defendant Passaro is the wife of Defendant Reda, is a part-owner of SLJ Bar LLC, and, at times relevant, was involved with oversight of issues of legal compliance.

30. Defendant Romer is a part-owner of SLJ Bar LLC, has been present and personally addresses wage-and-hour related complaints at Common Ground on behalf of Defendant Reda.

Defendant Romer is regularly present and responded to employment issues raised by Plaintiff and other employees.

31. Defendant Baer is a part-owner of SLJ Bar LLC, was responsible at times relevant for financing payroll (among other things) and, at times relevant would oversee operations of Common Ground.

32. At all relevant times, Defendants operated as joint employers of Plaintiff, the FLSA Collective Plaintiffs, and the Rule 23 Class Members within the meaning of the FLSA and NYLL.

33. As a matter of economic reality, Defendants directly and indirectly exercised operational and economic control over Plaintiff's employment. Defendants controlled and/or maintained overall oversight of the terms and conditions of Plaintiff's work, including hiring, firing, scheduling, supervision, discipline, payroll, tip distribution, timekeeping, employee communications, and access to workplace systems. The same applies to FLSA Collective Plaintiffs and Class Members.

34. Defendants were operated in a manner that obscured formal distinctions among the entities and individuals responsible for Plaintiff's wages (and those of FLSA Collective Plaintiffs and Class Members) and allowed Defendants to jointly benefit from the wage-and-hour violations alleged herein.

35. At all relevant times, the Individual Defendants possessed and exercised operational and economic control over Plaintiff's employment and over the employment of the FLSA Collective Plaintiffs and Class Members.

36. Specifically, the Individual Defendants possessed and exercised the power to: (a) hire and fire employees; (b) supervise and control employee work schedules and conditions of employment; (c) determine the rate and method of payment, including by withholding wages,

dictating tip-sharing percentages, and controlling gratuity distributions; and (d) maintain and control employment records, including payroll, timekeeping, scheduling, and workplace communications.

37. The Individual Defendants exercised direct operational control over the wage-and-hour practices challenged in this action and personally participated in the wage withholding, late payroll, tip misappropriation, unlawful deductions, and record manipulation alleged herein.

38. Accordingly, Defendants are jointly and severally liable as employers under the broad, remedial definitions of the FLSA and NYLL. See *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984); *Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 71-72 (2d Cir. 2003); *Irizarry v. Catsimatidis*, 722 F.3d 99, 110-17 (2d Cir. 2013).

**FLSA COLLECTIVE ACTION ALLEGATIONS**

39. Plaintiff brings her FLSA claims as a collective action pursuant to 29 U.S.C. § 216(b), on behalf of herself and all similarly situated current and former bartenders, servers, barbacks, bussers, bottle-service workers, hospitality workers, service workers, event workers, and other hourly and/or tipped workers employed by Common Ground at 63 Gansevoort St., New York, NY 10014 at any time during the three (3) years preceding the filing of this Complaint through the date of final judgment who opt into this action (the "FLSA Collective Plaintiffs").

40. Plaintiff and the FLSA Collective Plaintiffs are similarly situated because they were subject to Defendants' common wage-and-hour policies and practices of paying subminimum wages without satisfying the requirements for a valid tip credit, failing to pay wages, confiscating and misappropriating tips, making unlawful deductions from gratuities, and failing to pay all earned wages in violation of the FLSA.

41. The FLSA Collective Plaintiffs are readily identifiable from Defendants' records, including payroll records, onboarding documents, schedules, timekeeping records, tip sheets, tip-distribution records, employee handbooks, chat messages, emails, text messages, payroll communications, and other records maintained by Defendants.

42. Court-authorized notice is appropriate to inform similarly situated workers of their right to opt into this action. Notice should be distributed by first-class mail, email, text message, workplace posting, and any other reasonable means using the last known contact information maintained by Defendants.

43. Plaintiff therefore requests that the Court conditionally certify this matter as an FLSA collective action, order Defendants to produce the names, last known mailing addresses, email addresses, telephone numbers, dates of employment, positions held, and other relevant identifying information for all FLSA Collective Plaintiffs, and authorize notice pursuant to 29 U.S.C. § 216(b).

## RULE 23 CLASS ACTION ALLEGATIONS

44. Plaintiff brings her NYLL claims pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3) on behalf of herself and a Rule 23 Class consisting of Plaintiff and all similarly situated current and former bartenders, servers, barbacks, bussers, bottle-service workers, hospitality workers, service workers, event workers, and other hourly and/or tipped workers employed by Common Ground at 63 Gansevoort St., New York, NY 10014 at any time during the six (6) years preceding the filing of this Complaint through the date of final judgment.

45. Excluded from the Class are Defendants, Defendants' owners, officers, directors, managers, members, agents, legal representatives, successors and assigns, and any judicial officer assigned to this matter and their immediate family members.

46. Throughout the relevant period, Plaintiff and Class Members were subject to Defendants' common wage-and-hour policies and practices, including Defendants' policies and practices of failing to pay all earned wages, failing to pay minimum wages and regular wages, misappropriating tips, operating unlawful tip-pooling arrangements, making unlawful deductions from gratuities, failing to pay wages timely, and failing to provide legally compliant wage notices and wage statements.

47. The Class is readily ascertainable. Class Members may be identified through Defendants' records, including payroll records, onboarding documents, schedules, timekeeping records, tip sheets, tip-distribution records, employee handbooks, wage complaints, emails, text messages, schedule records, and communications maintained by Defendants.

48. The Class is so numerous that joinder of all members is impracticable. Upon information and belief, Defendants employed more than forty Class Members during the relevant period, and the precise number and identity of Class Members are within Defendants' possession, custody, or control.

49. Common questions of law and fact exist as to Plaintiff and Class Members, including but not limited to: (a) whether Defendants operated as joint employers of Plaintiff and Class Members; (b) whether Defendants failed to pay Plaintiff and Class Members all wages owed; (c) whether Defendants failed to pay minimum wages and overtime compensation; (d) whether Defendants misappropriated tips, made unlawful deductions from gratuities, prevented tipped workers from tracking gratuities, or operated unlawful tip-pooling arrangements; (e) whether Defendants failed to timely pay wages in violation of NYLL § 191; (f) whether Defendants failed to provide wage notices required by NYLL § 195(1); (g) whether Defendants failed to provide wage statements required by NYLL § 195(3); (h) whether Defendants' violations were willful; and

(i) whether Plaintiff and Class Members are entitled to damages, liquidated damages, prejudgment interest, attorneys' fees, and costs.

50. Plaintiff's claims are typical of the claims of the Class because Plaintiff and Class Members were subject to the same or substantially similar unlawful wage-and-hour policies and practices, and their claims arise from the same course of conduct and legal theories.

51. Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has no interests antagonistic to the Class, and Plaintiff is represented by counsel experienced in wage-and-hour litigation, employment litigation, and class actions.

52. This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

53. Common questions of law and fact predominate over any individualized questions because Plaintiff's and Class Members' claims arise from Defendants' common policies, practices, payroll systems, wage-payment practices, tip-distribution practices, and uniform failure to provide compliant wage notices and wage statements.

54. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Many Class Members may lack the financial resources or incentive to pursue individual claims, and class treatment will promote efficiency, consistency, and judicial economy by resolving common issues in a single proceeding.

55. Notice can be provided to Class Members by first-class mail, email, text message, posting at Defendants' worksites and digital platforms, and any other means permitted by the Court using contact information maintained in Defendants' records.

## STATEMENT OF FACTS

56. Throughout her employment as a bartender at Common Ground, Plaintiff was paid a purported tipped wage of approximately $10.00 per hour (although, as discussed below, Plaintiff - like FLSA Collective Plaintiffs and Class Members - was regularly not paid in a timely manner, and received no compensation for her work for lengthy periods).

57. With respect to Plaintiff, FLSA Collective Plaintiffs and Class Members, Defendants failed to pay the correct New York State tipped wage which has been $11.50 per hour for tipped food service employees during the entirety of Plaintiff's employment.

58. From 2023 to mid-2024, Plaintiff worked approximately 24-32 hours per week.

59. From mid-2024-2026, Plaintiff worked approximately 15-20 hours per week.

60. Under the FLSA, an employer may not claim a tip credit unless it first informs the employee of: (i) the cash wage being paid; (ii) the additional amount claimed as a tip credit; (iii) that the tip credit cannot exceed tips actually received; (iv) that all tips are to be retained by the employee except for a valid tip-pooling arrangement; and (v) that the credit will not apply unless the employee has been so informed. See 29 U.S.C. § 203(m). New York law is even more stringent, requiring employers to give each employee written notice, at the start of employment, of their regular and overtime pay rates, the amount of the tip credit, and the regular payday. See 12 N.Y.C.R.R. § 146-2.2. This notice must be in English and the employee's primary language, and the employer must obtain a signed acknowledgment kept on file for six years. Id.

61. Plaintiff was not provided written notice as provided by law stating her regular hourly pay rate, overtime rate, the amount of any tip credit to be taken from the basic minimum hourly rate, or that additional wages would be paid if tips were insufficient to bring her up to the

basic minimum wage, nor did Defendants obtain a signed acknowledgment of any such notice as required by 12 N.Y.C.R.R. § 146-2.2.

62. Similarly, FLSA Collective Plaintiffs and Rule 23 Class Members were deprived of proper tip credit notice. Thus Defendants were not entitled to take tip credits from their pay.

63. Other tipped front-of-house employees were subject to the same or similar pay structure as Plaintiff—paid a sub-minimum hourly rate plus tips under an employer-claimed tip credit, without the written tip-credit notices, bilingual disclosures, and signed acknowledgments required by New York law.

64. Defendants engaged in a systemic tip misappropriation scheme. Plaintiff and other bartenders initially agreed to a tip sheet and tip-pool arrangement that they understood to be fair. Defendants thereafter changed the arrangement without notice, including by taking money from the tip pool and diverting gratuities away from bartenders and other tipped workers.

65. Defendants forced Plaintiff and other Class Members to share tips with non-tipped employees and managers.

66. Defendants arbitrarily departed from the tip arrangement when they felt like it.

67. Plaintiff and other front-of-house employees, including bartenders, servers, and bussers, had no input into the design of the tip pool or its distribution rules.

68. Defendants and their agents unlawfully retained gratuities and portions of gratuities for themselves and/or distributed them at their arbitrary discretion.

69. Defendants also permitted managers to take from, and maintain control of the tip pool.

70. When Defendants distributed tips, they required Plaintiff, FLSA Collective Plaintiffs, and Class Members to share gratuities based on management-dictated percentages rather

than through a lawful, transparent, and compliant tip pool limited to eligible service employees who customarily and regularly received tips.

71. Defendants also deducted a 2.5% credit-card fee from the bartender total tip pool, thereby reducing the gratuities owed to Plaintiff and Class Members. Defendants failed to limit any such deduction to the actual credit-card processing cost attributable to the gratuity portion of a credit-card transaction and failed to provide transparent records demonstrating the lawfulness of the deduction.

72. Defendants further failed to properly distribute gratuities and/or mandatory service charges arising from "buyout events" for which one party bought out the entire premises.

73. Since at least December 2023, Defendants frequently failed to compensate Plaintiff, FLSA Collective Plaintiffs, and Class Members on time. These late-pay practices continued throughout 2024 and 2025.

74. The New York State Department of Labor investigated Common Ground twice in February and December 2025, found NYLL violations each time that included untimely payment of employees, and issued penalties each time. Nevertheless, even after receiving penalties from the DOL, Defendants persisted in refusing and failingto pay Plaintiff and Class Members in a timely fashion in violation of the NYLL.

75. For example, after the failed DOL audit, payroll dated August 3, 2025 was delayed by **more than one month**.

76. In September 2025, Defendants were approximately six weeks behind on payroll. Defendants issued Plaintiff a "tips only" check for $469.32 for the payroll week ending September 14, 2025, but did not issue that check until October 24, 2025, more than a month late.

77. Accordingly, in September 2025, Plaintiff worked 15-20 hours per week but did not receive either the federal or state minimum wage,.

78. Similar, FLSA Collective Plaintiffs and Class Members were not paid for weeks on end and expected to work for free, in clear violation of the federal and state minimum wage laws.

79. Defendants failed to make, keep, and preserve accurate records of hours worked, wages paid, and gratuities collected and distributed, and used their control over payroll, timekeeping, and tip-distribution systems to obscure the full extent of their wage-and-hour violations.

80. To the extent that tip sheets were provided, the numbers were false. The sheets did not include the complete tips/gratuities. Upon information and belief, Defendants would deduct from the tips and gratuity amounts "off the top."

81. As one example, on or about Wednesday, June 10, 2026, Common Ground was exceptionally busy with patrons there to watch the New York Knicks play in the NBA Finals. Plaintiff was a bartender working that night. The manager on duty did not work behind the bar at all. Nevertheless, with authorization from Defendants, the manager took a substantial amount of the tips – the equivalent of tips from 8 hours of bartending – from the pool. This unlawful misappropriation of tips reduced the earnings of Plaintiff, FLSA Collective Plaintiffs, and Class Members.

82. In addition, with respect to "buy-out contracts" Plaintiffs, FLSA Collective Plaintiffs, and Class Members were promised 20% of the full contract amount of each contract in tips. A buy-out contract is when Common Ground is rented out by a party for a certain timeframe (typically 2-3 hours for which the full contract would be $50,000 or more). Defendants failed to

provide Plaintiff and Class Members the contract and would pay Plaintiff and Class Members an arbitrary amount in tips below 20% of the contract.

83. Plaintiff was not paid for time spent cleaning, counting cash, and completing post-shift paperwork after shifts each shift (between 30 minutes and 1 hour). Similarly FLSA Collective Plaintiffs and Class Members were deprived of pay for post-shift cleaning, cash counting, and completing post-shift paperwork.

84. Despite not paying Plaintiff and others in accordance with the law, Defendants would admonish and discipline employees for taking lawful breaks during shifts. For example, on one occasion, Plaintiff was admonished for taking a bathroom break that was necessary as she was menstruating.

85. The payroll delays and tip misconduct described herein were well known to Individual Defendants.. Plaintiff complained to Chris Reda about the fact that workers were approximately six weeks behind on pay. Reda responded in substance, "Oh, I didn't know you were so unhappy?" Plaintiff explained that she simply needed to be paid to meet her obligations. However, in spite of Plaintiff's complaint, wages and tips remained outstanding.

86. In June 2026, after payment of wages was once again delayed, Plaintiff complained to Reda again about Defendants' failure to pay the whole staff.

87. However, no corrective action was taken.

88. Thereafter, on approximately June 18, 2026. Defendant Romer informed Plaintiff the wages and tips she had earned were being garnished. This was retaliation for complaining about unpaid wages and tips.

89. Plaintiff retained TA Legal Group PLLC as counsel to represent her, the FLSA Collective Plaintiffs, and the Rule 23 Class Members in this litigation, and has agreed to pay the firm a reasonable fee for its services.

## **CAUSES OF ACTION**

### **COUNT I - FAIR LABOR STANDARDS ACT - MINIMUM WAGE**

**(On Behalf of Plaintiff and the FLSA Collective Plaintiffs against All Defendants)**

90. Plaintiff realleges and incorporates by reference all preceding paragraphs.

91. At all relevant times, Plaintiff and the FLSA Collective Plaintiffs were "employees" of Defendants, and Defendants were "employers" of Plaintiff and the FLSA Collective Plaintiffs, within the meaning of the FLSA, 29 U.S.C. §§ 203(e), (d).

92. At all relevant times, Defendants were joint employers of Plaintiff and the FLSA Collective Plaintiffs because they exercised operational and economic control over Plaintiff's employment, including the power to hire and fire, supervise and control work schedules and conditions of employment, determine rates and methods of payment, and maintain or control employment records. See *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984); *Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 71-72 (2d Cir. 2003).

93. At all relevant times, Defendants constituted an enterprise engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 203(s)(1)(A). Upon information and belief, Defendants' enterprise had an annual gross volume of sales made or business done of not less than $500,000, and Plaintiff and other employees handled goods, equipment, alcohol, food, supplies, uniforms, point-of-sale systems, credit-card systems, and other materials that moved in interstate commerce.

94. Pursuant to 29 U.S.C. § 206, Defendants were required to pay Plaintiff and the FLSA Collective Plaintiffs at least the applicable federal minimum wage for all hours worked.

95. Defendants violated the FLSA by causing and permitting Plaintiff and similarly situated workers to work without proper compensation at or above the minimum wage.

96. Defendants possessed actual or constructive knowledge of Plaintiff's and similarly situated workers' uncompensated work, including through their direct scheduling and supervision of workers, their control over payroll records, tip sheets, and timekeeping records, and repeated wage complaints.

97. To the extent Defendants contend that they were entitled to take any tip credit against the federal minimum wage, such tip credit was invalid. Defendants failed to provide the requisite statutory notice required by 29 U.S.C. § 203(m)(2)(A), misappropriated and retained employee tips in violation of 29 U.S.C. § 203(m)(2)(B), and required an unlawful tip pool.

98. Defendants' failure to pay Plaintiff and the FLSA Collective Plaintiffs the mandated minimum wage and overtime compensation was willful, knowing, and intentional, thereby extending the applicable limitations period to three years pursuant to 29 U.S.C. § 255(a).

99. Defendants also failed to make, keep, and preserve accurate records of the hours worked by Plaintiff and the FLSA Collective Plaintiffs, as required by 29 U.S.C. § 211(c). `1

100. As a direct and proximate result of Defendants' willful and unlawful conduct, Plaintiff and the FLSA Collective Plaintiffs suffered financial damages in an amount to be determined at trial.

101. Accordingly, Plaintiff and the FLSA Collective Plaintiffs are entitled to recover unpaid minimum wages, , liquidated damages in an amount equal to their unpaid minimum, and reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

**COUNT II - NEW YORK LABOR LAW – UNPAID MINIMUM WAGES**

**(On Behalf of Plaintiff and the Rule 23 Class Against All Defendants)**

102. Plaintiff realleges and incorporates by reference all preceding paragraphs.

103. At all relevant times, Plaintiff and the Rule 23 Class Members were "employees," and Defendants were "employers," within the meaning of NYLL §§ 651(5) and 651(6). Defendants were required to comply with NYLL Article 19, including NYLL § 652, and the applicable New York State Department of Labor regulations, including the Hospitality Industry Wage Order, 12 N.Y.C.R.R. Part 146.

104. At all relevant times, Defendants operated a hospitality establishment within the meaning of 12 N.Y.C.R.R. Part 146.

105. At all relevant times, Defendants were joint employers of Plaintiff and the Rule 23 Class Members because they exercised operational and economic control over Plaintiff's employment, including by controlling hiring, firing, scheduling, supervision, discipline, rates and methods of pay, timekeeping, tip distribution, and payroll records. See *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984); *Irizarry v. Catsimatidis*, 722 F.3d 99, 117 (2d Cir. 2013).

106. Pursuant to NYLL § 652 and 12 N.Y.C.R.R. § 146-1.2, Defendants were required to pay Plaintiff and the Rule 23 Class Members at least the applicable New York minimum wage for all hours worked.

107. Defendants violated the NYLL by causing and permitting Plaintiff and the Rule 23 Class Members to work without proper compensation.

108. Under New York law, an employer may not claim a tip credit unless it provides the written notices and acknowledgments required by 12 N.Y.C.R.R. § 146-2.2. Plaintiff was never

provided the written notice required by that regulation, and other tipped front-of-house employees were subject to the same pay structure without the required notices and acknowledgments.

109. To the extent Defendants contend that they were entitled to take any tip credit against the minimum wage, such tip credit was invalid because Defendants failed to satisfy the notice and recordkeeping requirements for a tip credit, failed to permit employees to retain gratuities except as permitted by law, and misappropriated and/or retained employee tips.

110. In *Gamero v. Koodo Sushi Corp.*, 272 F. Supp. 3d 481, 508 (S.D.N.Y. 2017), the court held that "an employer who does not comply with the NYLL's requirements for taking a tip credit is liable for the difference between the full minimum wage rate and what the employee was actually paid." When "an employee performs both tipped and untipped work, the question of whether an employer is entitled to apply a tip credit for minimum wage purposes turns on whether the employee spends more than twenty percent of his or her workweek performing non-tipped work. If so, the employer is not entitled to apply a tip credit, and must pay that employee the full minimum wage." *Id.* at 500.

111. Here, the tip credit was rendered invalid because Plaintiff and other employees were required to perform non-tipped work for more than 20% of each shift.

112. Defendants' failure to pay Plaintiff and the Rule 23 Class Members the statutorily mandated minimum wage compensation was willful, knowing, and intentional, and formed part of a practice to minimize labor costs at the expense of their workforce.

113. In addition, Plaintiff and Class Members were deprived of regular wages based on unpaid post shift time spent cleaning.

114. Accordingly, Plaintiff and the Rule 23 Class Members are entitled to recover unpaid minimum wages, unpaid regular wages, liquidated damages equal to 100% of the total amount of

wages found to be due, pre-judgment interest, and reasonable attorneys' fees and costs pursuant to NYLL § 663(1), and all other applicable provisions of the NYLL.

## COUNT III - NEW YORK LABOR LAW - TIP MISAPPROPRIATION, ILLEGAL TIP POOLING, AND UNLAWFUL GRATUITY DEDUCTIONS

**(On Behalf of Plaintiff and the Rule 23 Class Against All Defendants)**

115. Plaintiff realleges and incorporates by reference all preceding paragraphs.

116. At all relevant times, Plaintiff and the Rule 23 Class Members were "employees," and Defendants were "employers," within the meaning of NYLL §§ 190(2), 190(3), and 196-d, and the supporting New York State Department of Labor regulations, including the Hospitality Industry Wage Order, 12 N.Y.C.R.R. Part 146.

117. NYLL § 196-d prohibits an employer, its agent, or an officer or agent of any corporation from demanding, accepting, or retaining, directly or indirectly, any part of the gratuities received by an employee, or any part of a charge purported to be a gratuity for an employee.

118. NYLL § 196-d and 12 N.Y.C.R.R. § 146-2.14 further prohibit employers from requiring tipped employees to share gratuities with managers, employer agents, non-service employees, employees who do not customarily and regularly receive tips, or other statutorily ineligible participants, and set forth requirements governing the operation of lawful tip sharing and tip pooling in the hospitality industry.

119. Defendants deliberately and willfully violated NYLL § 196-d by implementing a mandatory, unlawful tip-pooling and tip-retention scheme across their enterprise.

120. Defendants altered tip-pool arrangements and tip sheets without notice, diverting gratuities from bartenders and other tipped workers to bottle-service workers who were not part of the originally agreed-upon tip sheet and/or were not lawful participants in the tip pool.

121. Defendants and their agents unlawfully retained portions of gratuities for themselves and/or distributed them at their arbitrary discretion. When Defendants distributed tips, they required Plaintiff and other tipped workers to share gratuities based on management-dictated percentages rather than through a lawful, transparent, and compliant tip pool limited to eligible service employees who customarily and regularly received tips.

122. Defendants also deducted a 2.5% credit-card fee from the bartender total tip pool, thereby reducing the gratuities owed to Plaintiff and Class Members. Defendants failed to limit any such deduction to the actual credit-card processing cost attributable to the gratuity portion of a credit-card transaction and failed to provide transparent records demonstrating the lawfulness of the deduction.

123. Defendants further failed to properly distribute gratuities and/or mandatory service charges arising from a $40,000 buyout event, where bartenders expected approximately $1,500 each but received substantially less.

124. In violation of 12 N.Y.C.R.R. § 146-2.17, Defendants failed to establish, maintain, and preserve the required records detailing the amount of gratuities collected and the exact methodology of their distribution, deliberately obscuring their misappropriation.

125. Defendants' misappropriation and retention of Plaintiff's tips were willful, knowing, and intentional, and formed part of an enterprise-wide practice to exploit their workforce and artificially reduce labor costs.

126. Defendants' willful violations of NYLL § 196-d entitle Plaintiff and the Rule 23 Class Members to recover their unlawfully retained and misappropriated tips, liquidated damages equal to 100% of the gratuities found to be due, pre-judgment interest, and reasonable attorneys' fees and costs pursuant to NYLL § 198(1-a), and all other relief available under the NYLL.

**COUNT IV - NEW YORK LABOR LAW - FAILURE TO PAY TIMELY WAGES**

**(On Behalf of Plaintiff and the Rule 23 Class Against All Defendants)**

127. Plaintiff realleges and incorporates by reference all preceding paragraphs.

128. At all relevant times, Plaintiff and the Rule 23 Class Members were "employees," and Defendants were "employers," within the meaning of NYLL §§ 190(2) and 190(3).

129. At all relevant times, Plaintiff and many Rule 23 Class Members were "manual workers" within the meaning of NYLL § 190(4), because they spent more than twenty-five percent (25%) of their working time performing physical labor, including standing, walking, carrying items, stocking bars, setting up and breaking down service areas, cleaning, organizing, handling alcohol and supplies, and performing other physical tasks integral to Defendants' nightlife, bar, restaurant, and hospitality operations.

130. As manual workers, Plaintiff and similarly situated Rule 23 Class Members were required to be paid weekly and not later than seven calendar days after the end of the week in which their wages were earned pursuant to NYLL § 191(1)(a). In the alternative, to the extent any Plaintiff or Rule 23 Class Member is deemed a "clerical and other worker," Defendants were required to pay them no less frequently than semi-monthly pursuant to NYLL § 191(1)(d).

131. Defendants willfully violated NYLL § 191 by failing to pay Plaintiff and the Rule 23 Class Members their earned wages on the statutorily required payday. Defendants routinely delayed payroll for weeks or months, thereby shifting Defendants' operating burdens onto their workers.

132. Defendants' violations were willful, calculated, and devoid of any good-faith basis. Defendants' recurring payroll delays began by at least December 2023 and continued through 2024 and 2025. In September 2025, Defendants were approximately six weeks behind on payroll.

133. Defendants issued Plaintiff a "tips only" check for $469.32 for the payroll week ending September 14, 2025, but did not issue that check until October 24, 2025, more than a month late.

134. When Plaintiff complained to Reda about the late and unpaid wages, Defendants responded with evasion and indifference rather than immediately paying all wages owed.

135. New York courts have recognized that manual workers may assert a private right of action under NYLL §§ 191 and 198(1-a) for the untimely payment of wages. See Vega v. CM & Assocs. Constr. Mgt., LLC, 175 A.D.3d 1144, 1146 (1st Dep't 2019). Defendants' systemic failure to pay Plaintiff and Rule 23 Class Members on the statutorily mandated payday therefore constitutes a compensable violation of the NYLL to the fullest extent permitted by law.

136. NYLL § 198(1-a) authorizes recovery of underpayments, liquidated damages, prejudgment interest, reasonable attorneys' fees, and costs for violations of Article 6, to the fullest extent permitted by law.

137. Separately, to the extent Defendants entirely failed to issue wages for certain pay periods, service shifts, closing work, seasonal work, event work, or other compensable labor, those completely unpaid and withheld wages constitute independent and distinct wage underpayments recoverable under NYLL Article 6 and applicable provisions of the NYLL.

138. Accordingly, Plaintiff and the Rule 23 Class Members are entitled, to the fullest extent permitted by law, to recover unpaid wages, damages for wages not paid on the statutorily required payday, liquidated damages where available, pre-judgment interest, reasonable attorneys' fees and costs, and all other relief available under the NYLL.

## COUNT V - NEW YORK LABOR LAW - WAGE NOTICE AND WAGE STATEMENT VIOLATIONS

**(On Behalf of Plaintiff and the Rule 23 Class Against All Defendants)**

139. Plaintiff realleges and incorporates by reference all preceding paragraphs.

140. At all relevant times, Plaintiff and the Rule 23 Class Members were "employees," and Defendants were "employers," within the meaning of NYLL §§ 190(2) and 190(3), and were covered by the notice and statement requirements of NYLL § 195.

141. The New York Labor Law requires employers to provide employees, at the time of hiring, a written wage notice containing, among other things, the employee's rate or rates of pay, the basis of pay, any allowances claimed as part of the minimum wage, the regular payday, the employer's name and contact information, and other information required by statute. NYLL § 195(1).

142. The New York Labor Law further requires employers to provide employees, with every payment of wages, an accurate wage statement listing, among other things, the dates of work covered by the payment, rate or rates of pay, gross wages, deductions, allowances, net wages, and, for non-exempt employees, regular hours worked, overtime hours worked, regular hourly rate, and overtime rate. NYLL § 195(3).

143. Defendants willfully violated NYLL § 195(1) by failing to provide Plaintiff and the Rule 23 Class Members with accurate wage notices at the time of hiring and/or by providing notices that were inaccurate or incomplete as to the true employing entities, regular payday, rates of pay, tip-credit information, allowances claimed, and other required information.

144. Defendants further violated NYLL § 195(3) by failing to provide Plaintiff and the Rule 23 Class Members with accurate wage statements each payday. To the extent any statements were generated or made available, they were inaccurate, incomplete, stale, or inaccessible.

145. Those wage statements failed to accurately reflect Plaintiff's regular rates of pay, overtime rates of pay, actual hours worked, gross wages, deductions, allowances, tip credits

claimed, gratuities retained or distributed, net wages, pay periods covered, and the proper employing entities.

146. Defendants' violations were calculated and systematic. Defendants maintained exclusive control over their payroll, timekeeping, and tip-distribution systems and used that control to withhold, manipulate, or fail to provide accurate wage and hour records.

147. Defendants' failure to provide accurate wage notices and wage statements caused Plaintiff and the Rule 23 Class Members to suffer a concrete, informational injury. This deprivation facilitated Defendants' wage theft scheme by preventing Plaintiff from verifying her hours worked, calculating overtime owed, identifying unlawful tip deductions or tip retention, confirming the regular payday, determining whether tip credits or other allowances were being claimed, and identifying the correct corporate entities and individuals responsible for her wages. *See Guthrie v. Rainbow Fencing Inc.*, No. 23-350, 2024 WL 3996267, at *4-5 (2d Cir. Aug. 30, 2024); *Metcalf v. TransPerfect Translations Int'l, Inc.*, No. 19-CV-10104, 2023 WL 2674743, at *6 (S.D.N.Y. Mar. 29, 2023).

148. Defendants' failure to furnish accurate wage notices and wage statements further injured Plaintiff and the Rule 23 Class Members by impairing their ability to timely detect, challenge, and remedy Defendants' wage violations, including unpaid wages, late-paid wages, unpaid overtime, misappropriated tips, and improper deductions.

149. Pursuant to NYLL § 198(1-b), Plaintiff and the Rule 23 Class Members are entitled to recover statutory damages of $50.00 for each workday that Defendants failed to provide proper wage notices under NYLL § 195(1), up to a maximum of $5,000.00 per Plaintiff and Class Member, together with reasonable attorneys' fees and costs.

150. Pursuant to NYLL § 198(1-d), Plaintiff and the Rule 23 Class Members are entitled to recover statutory damages of $250.00 for each workday that Defendants failed to provide accurate wage statements under NYLL § 195(3), up to a maximum of $5,000.00 per Plaintiff and Class Member, together with reasonable attorneys' fees and costs.

151. Defendants violated NYLL §§ 195(1), 195(3), 198(1-b), and 198(1-d) and therefore, Plaintiff and the Rule 23 Class Members are entitled to recover statutory damages, reasonable attorneys' fees, costs, and all other relief available under the NYLL.

**COUNT VI – RETALIATION IN VIOLATION OF THE FAIR LABOR STANDARDS ACT AND NEW YORK LABOR LAW**

***(On Behalf of Plaintiff Individually Against All Defendants)***

152. Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

153. At all relevant times, the Individual Defendants exercised operational and economic control over Plaintiff's employment, including payroll, wage payment, supervision, scheduling, and employment records.

154. Plaintiff engaged in protected activity by complaining directly to Defendant Reda that workers were approximately six weeks behind on pay, explaining that she needed to be paid to meet her obligations, and then complaining again in June 2026 about Defendants' failure to pay the whole staff.

155. Defendants knew of Plaintiff's protected activity because Plaintiff made those complaints directly to Reda, and no corrective action was taken after her complaints.

156. Under 29 U.S.C. § 215(a)(3), it is unlawful to discharge or otherwise discriminate against an employee because the employee has filed a complaint, and in *Greathouse v. JHS Sec. Inc.*, 784 F.3d 105 (2015), the Second Circuit held that an oral complaint to an employer may

qualify when it is sufficiently clear and detailed to put the employer on notice of an assertion of FLSA rights.

157. Thereafter, on approximately June 18, 2026, Defendant Romer informed Plaintiff that the wages and tips she had earned were being garnished, and the draft complaint alleges that this garnishment was in retaliation for Plaintiff's complaints about unpaid wages and tips.

158. Defendants' garnishment and withholding of Plaintiff's earned wages and tips was materially adverse and would dissuade a reasonable employee from making similar complaints.

159. The close timing between Plaintiff's wage complaints and the garnishment of her earned wages and tips supports a causal connection between Plaintiff's protected activity and Defendants' retaliatory conduct.

160. Defendants' retaliatory conduct was willful, intentional, and undertaken in disregard of Plaintiff's protected rights.

161. As a direct and proximate result of Defendants' retaliation, Plaintiff has suffered damages, including lost compensation and other compensable harm.

162. Under 29 U.S.C. § 216(b), an employer who violates 29 U.S.C. § 215(a)(3) is liable for such legal or equitable relief as may be appropriate to effectuate the purposes of the anti-retaliation provision, including lost wages and an additional equal amount as liquidated damages.

163. Accordingly, Plaintiff is entitled to recover all legal and equitable relief available for retaliation under the FLSA and NYLL, including lost wages, liquidated damages, compensatory damages, penalties available under the NYLL, punitive damages to the fullest extent permitted by law, attorneys' fees, costs, and such other relief as the Court deems just and proper.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the FLSA Collective Plaintiffs, and the Rule 23 Class Members, respectfully requests that this Court enter judgment in her favor and against Defendants, jointly and severally, granting the following relief:

**A. Certification and Notice**

- Designation of this action as a collective action under the FLSA, 29 U.S.C. § 216(b), on behalf of the FLSA Collective Plaintiffs;
- Issuance of prompt, Court-authorized notice to all similarly situated employees advising them of their right to opt into this action;
- Certification of this action as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of the Rule 23 Class.
- Appointment of Plaintiff as Class Representative;
- Appointment of Plaintiff's counsel as Class Counsel;

**B. Declaratory and Injunctive Relief**

- A declaratory judgment that Defendants operated as joint employers and/or a single integrated enterprise and are jointly and severally liable for the violations alleged herein;
- A declaratory judgment that Defendants' practices violated the minimum wage, tip-retention, and anti-retaliation provisions of the Fair Labor Standards Act;
- A declaratory judgment that Defendants' practices violated the minimum wage, regular wage, tip misappropriation, timely payment, wage notice, wage statement, and anti-retaliation provisions of the New York Labor Law;
- A declaratory judgment that Defendants' violations of the FLSA and NYLL were willful, intentional, and devoid of any good-faith basis;

- An injunction prohibiting Defendants from continuing the unlawful wage, tip, payroll, recordkeeping, and retaliation practices alleged herein;

**C. Wage, Tip, Retaliation and Liquidated Damages**

- An award of all unpaid minimum wages, un, and other unpaid wages owed to Plaintiff, the FLSA Collective Plaintiffs, and the Rule 23 Class Members under the FLSA and NYLL.
- An award of all misappropriated, unlawfully retained, unlawfully deducted, and/or unlawfully distributed tips and gratuities owed to Plaintiff and the Rule 23 Class Members;
- An award of damages for wages not paid on the statutorily required payday, to the fullest extent available under NYLL §§ 191 and 198;
- An award of liquidated damages in an amount equal to one hundred percent (100%) of all unpaid wages and misappropriated tips, and liquidated damages, statutory damages, or other available relief for late-paid wages to the fullest extent permitted under NYLL §§ 191 and 198;
- An award of back and front wages, emotional distress damages, other compensatory damages, punitive damages, penalties available under the NYLL, and attorney's fees and costs for retaliation under the FLSA and NYLL anti-retaliation provisions in favor of Plaintiff.

**D. Statutory Damages**

- An award of statutory damages in the amount of $50.00 per workday, up to a maximum of $5,000.00 per Plaintiff and Class Member, for Defendants' failure to provide accurate wage notices under NYLL § 195(1);
- An award of statutory damages in the amount of $250.00 per workday, up to a maximum of $5,000.00 per Plaintiff and Class Member, for Defendants' failure to provide accurate wage statements under NYLL § 195(3);

**F. Interest, Fees, Costs, and General Relief**

- An award of pre-judgment and post-judgment interest at the highest rates allowed by law;
- An award of reasonable attorneys' fees, costs, and expenses of this action pursuant to 29 U.S.C. § 216(b), NYLL §§ 198 and 215, and all other applicable law; and
- Such other, further, and different legal, equitable, and remedial relief as this Court may deem just, proper, and equitable.

**JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated: Huntington, NY
June 25, 2026

**TA LEGAL GROUP PLLC**
*Attorneys for Plaintiff, FLSA Collective Plaintiffs and Class Members.*

By: ______________________________

Taimur Alamgir, Esq.
205 East Main Street, Suite 3-2
Huntington, NY 11743
(914) 552-2669
tim@talegalgroup.com